IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Acuity, A Mutual Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Central States Trucking Company, Atlantic Trucking Company, Ed Caudle, Trina A. Boyd, as Personal Representative of the Estate of Derek L. Boyd,<br><br>Defendants. | C.A. No. 2:20-cv-00894-DCN<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**(Non-jury)** |

Plaintiff Acuity, A Mutual Insurance Company ("Acuity"), by and through its undersigned counsel, complaining of the Defendants Central States Trucking Company, ("Central"), Atlantic Trucking Company ("Atlantic"), Ed Caudle ("Caudle"), Trina A. Boyd, as Personal Representative of the Estate of Derek L. Boyd ("Estate of Boyd," collectively "Defendants"), respectively alleges and states as follows:

**NATURE OF ACTION**

1.     This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § § 2201-2202, and Federal Rule of Civil Procedure 57.

**PARTIES**

2.     Acuity is an insurance company organized and existing under the laws of the state of Wisconsin, with its principal place of business in the state of Wisconsin.

3.     Defendant Central is a corporation that is incorporated and existing under the laws of the state of Delaware with its principal place of business in the state of Illinois.

4.      Defendant Atlantic was a corporation that was incorporated and formerly existing under the laws of the state of South Carolina with its principal place of business in the state of South Carolina.

5.      Defendant Caudle is an individual who is a citizen of the state of South Carolina and is a resident of Berkeley County, South Carolina.

6.      The Decedent, Derek L. Boyd, was a citizen of the state of South Carolina.

7.      This case involves the interpretation of an insurance policy entered into in the state of Illinois and questions regarding whether coverage is afforded in connection with a claim that arose in the state of South Carolina.

8.      Jurisdiction exists because there is complete diversity of citizenship between Acuity and the Defendants, and the amount in controversy, including the potential costs of defending and indemnifying Central, Atlantic, and Caudle, potentially exceed $75,000.00. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

9.      Venue is appropriate under 28 U.S.C. § 1391 because the underlying lawsuit styled *Trina A. Boyd, as Personal Representative for the Estate of Derek L. Boyd v. Central States Trucking Co. f/k/a Atlantic Trucking Company, Inc. and Ed Caudle*, Case No. 2018-CP-10-05821 ("Underlying Lawsuit") and pending in the Court of Common Pleas for Charleston County, South Carolina involves damages allegedly arising out of an incident that occurred in this district.

10.      This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § § 2201-2202, and Federal Rule of Civil Procedure 57 to determine whether Acuity has a duty to defend or indemnify Central, Atlantic, and Caudle for all claims related to and arising out of the actions alleged in the Underlying Lawsuit.

A true and correct copy of the complaint in the Underlying Lawsuit is attached as **Exhibit A**, and the allegations of the complaint are incorporated as if fully stated here.

## FACTUAL BACKGROUND

**A.    Underlying Lawsuit.**

11.    The Estate has filed the Underlying Lawsuit against "Central States Trucking Company f/k/a Atlantic Trucking Company" and Caudle for injuries and wrongful death of the Decedent arising out of an incident that occurred on December 11, 2015.

12.    Per the complaint, the Decedent was at the Port of Charleston and that after a container was loaded onto his eighteen-wheeler he parked the truck to secure the container to the chassis.

13.    The Estate contends that the Decedent was struck by another eighteen-wheeler that was being operated by Caudle and that Caudle left the scene.

14.    The Estate contends the Decedent suffered injuries and subsequently died as a result of those injuries.

15.    The Estate seeks to recover actual damages and punitive damages and contends the Decedent experienced conscious pain and suffering and the Estate has allegedly incurred expenses as a result of the Decedent's death.

16.    The Estate alleges the damages it seeks to recover were the consequence of the alleged negligence, carelessness, recklessness, willfulness, wantonness, and grossly negligent conduct of "Central States Trucking Company f/k/a Atlantic Trucking Company" and Caudle.

17.    Acuity is currently defending Central and Caudle in connection with the Underlying Lawsuit under a full reservation of rights.

### B.     The Policy

18.     Acuity issued commercial automobile policy number F76452 ("the Policy") to the named insured "Central States Trucking Company" for the October 1, 2015 to April 1, 2016 policy period.  A true and correct copy of the Policy is attached as **Exhibit B**, and the terms of the Policy are incorporated as if fully stated here.

19.     The Policy also identifies the following additional named insureds:  1) Central States Logistics; 2) Labor Services Inc.; 3) Grane Investments LLC; 4) Grane Joliet LLC; 5) Grane Rochelle LLC; and 6) CST Logistics LLC.

20.     The Policy has a Business Auto Commercial Auto Coverage Part that provides a primary limit of liability insurance for covered autos in the amount of $1,000,000 each accident.

21.     The Policy identifies Covered Autos in the Policy Declarations with symbol 10, which per the Policy's endorsement entitled "Covered Auto Designation Symbol" is described as "[a]ny auto with a gross vehicle weight over 10,000 pounds and any leased trailer."

22.     Per the Policy's Business Auto Commercial Auto Coverage Part, coverage is afforded for "all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto*."

23.     The Policy defines "insured" as follows:

### SECTION V- DEFINITIONS

**** 

    **G.**    "*Insured*" means any person or organization qualifying as an *insured* in the Who Is an Insured provision of the applicable coverage.  Except with respect to the Limit of Insurance, the coverage afforded applies separately to each *insured* who is seeking coverage or against whom a claim or *suit* is brought.

24.     The Policy also provides:

## SECTION II – LIABILITY COVERAGE

**1.** **Who Is An Insured**

The following are *insureds:*

**a.** You for any covered *auto*.

**b.** Anyone else while using with your permission a covered *auto* you own, hire or borrow except:

    (1) The owner or anyone else from whom you hire or borrow a covered *auto*. This exception does not apply if he covered *auto* is a *trailer* connected to a covered *auto* you own.

    (2) Your *employee* if the covered *auto* is owned by that *employee* or a member of his or her household.

    (3) Someone using a covered *auto* while he or she is working in a business of selling, servicing, repairing, parking or storing *autos* unless that business is yours.

    (4) Anyone other than your *employees*, partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower or any of their *employees*, while moving property to or from a covered *auto*.

    (5) A partner (if you are a partnership), or member (if you are a limited liability company) for a covered *auto* owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an *insured* described above but only to the extent of that liability.

25. The Policy includes an endorsement entitled "*Acuity* Advantages – Business Auto," which provides in part:

This endorsement modifies insurance provided under the following:
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**1.    Newly Acquired Organizations.**

The following is added to paragraph A1, Who Is an Insured of Section II – Liability Coverage:

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

**a.**    Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.**    This coverage does not apply to bodily injury or property damage that occurred before you acquired or formed the organization;

**c.**    No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

26.    The Policy defines "employee," "leased worker," and "temporary employee" as follows:

### SECTION VI – DEFINITIONS

****

**F.**    "*Employee*" includes a *leased worker*.  *Employee* does not include a *temporary worker*.

****

**I.**    "*Leased worker*" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business.  *Leased worker* does not include a *temporary worker*.

****

**O.**  "*Temporary worker*" means a person who is furnished to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions.

27.    The Policy also contains a Commercial Excess Liability Coverage Part that provides an excess limit of liability insurance in the amount of $9,000,000 each occurrence.

28.    Per the Policy's Commercial Excess Liability Coverage Part, excess coverage is afforded for "those sums, in excess of the amount payable under the terms of any *underlying insurance*, that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Liability."

29.    Further, the Policy's Commercial Excess Liability Coverage Part states that the excess coverage "is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance*…."

30.    The Policy defines "underlying insurance" as follows:

### SECTION IV – DEFINITIONS

****

**7.**    "*Underlying insurance*" means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance in the Declarations, for the limits and periods indicated. It includes any policies issued to replace those policies during the term of this insurance, provided that you have notified us within 10 days of the replacement, and the replacement policies provide:

**a.**    At least the same policy limits:

**b.**    The same hazards insured against, except as modified by general program revisions; and

**c.**    The same coverage, including all terms, conditions and endorsements.

31.     Per the Declarations, the underlying insurance is identified as policy number CA-F76452.

32.     Atlantic was not an insured under the Policy at the time of the incident that occurred on December 11, 2015.

33.     Caudle was not an insured under the Policy at the time of the incident that occurred on December 11, 2015.

34.     Upon information and belief, Central acquired Atlantic in May of 2017.

35.     Central's acquisition of Atlantic occurred after the incident occurred on December 11, 2015 such that the Policy does not afford coverage for the damages alleged in the Underlying Lawsuit.

36.     A justiciable controversy exists between the parties in this action concerning whether coverage exists under the Policy for the damages sought by the Estate in connection with the Underlying Lawsuit.

37.     Acuity is entitled to a judicial declaration that the Policy issued to Central provides no coverage in connection with the claimed damages arising out of the incident that occurred on December 11, 2015.

### FOR A FIRST DECLARATION
**(No Coverage As to Atlantic)**

38.     The allegations contained in paragraphs 1 through 37, to the extent not inconsistent herewith, are incorporated as if fully stated here.

39.     The Policy provides that coverage is afforded only for "all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto*."

40.　　The Policy was issued to Central as the named insured under the Policy.

41.　　Atlantic is not the named insured on the Policy.

42.　　At the time of the incident that occurred on December 11, 2015, Atlantic was not using a covered *auto* that Central owned, hired, or borrowed.

43.　　At the time of the incident that occurred on December 11, 2015, Atlantic was not liable for the conduct of Central.

44.　　Atlantic is not an insured under the Policy.

45.　　Therefore, because Atlantic is not an insured under the Policy, the Policy does not provide coverage.

46.　　Accordingly, Acuity seeks a declaration from this Court that the Policy does not afford coverage for this claim because Atlantic is not an insured under the Policy.

**FOR A SECOND DECLARATION**
**(No Coverage As to Caudle)**

47.　　The allegations contained in paragraphs 1 through 46, to the extent not inconsistent herewith, are incorporated as if fully stated here.

48.　　The Policy provides that coverage is afforded only for "all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto*."

49.　　The Policy was issued to Central as the named insured under the Policy.

50.　　Caudle is not the named insured on the Policy.

51.　　At the time of the incident that occurred on December 11, 2015, Caudle was not using a covered *auto* that Central owned, hired, or borrowed.

52.　　At the time of the incident that occurred on December 11, 2015, Caudle was not

liable for the conduct of Central.

53.     Caudle is not an insured under the Policy.

54.     Therefore, because Caudle is not an insured under the Policy, the Policy does not provide coverage.

55.     Accordingly, Acuity seeks a declaration from this Court that the Policy does not afford coverage for this claim because Caudle is not an insured under the Policy.

### FOR A THIRD DECLARATION
**(No Coverage As to Central)**

56.     The allegations contained in paragraphs 1 through 55, to the extent not inconsistent herewith, are incorporated as if fully stated here.

57.     The Policy provides that coverage is afforded only for "all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto*."

58.     Per the terms of the Policy, an organization (other than a partnership, joint venture, or limited liability company) that Central newly acquires or forms is entitled to coverage under the Policy if there is no similar insurance available to that organization; however, the coverage does not apply to bodily injury or property damage that occurred before Central acquired or formed the organization.

59.     Per the allegations of the Complaint, the Estate is seeking to recover damages arising out of the incident that occurred on December 11, 2015 and the subsequent bodily injury to the Decedent.

60.     Upon information and belief, Central acquired Atlantic in May of 2017.

61.     Central's acquisition of Atlantic occurred after the incident occurred on

December 11, 2015.

62.    Therefore, because the Estate seeks to recover damages for bodily injury that occurred before Central acquired or formed Atlantic, the Policy does not afford coverage in connection with the Underlying Lawsuit.

63.    Accordingly, Acuity seeks a declaration from this Court that the Policy does not afford coverage for this claim because the alleged bodily injury occurred before Central acquired or formed Atlantic.

WHEREFORE, a justiciable controversy exists between the parties in this action arising out of these claims. Therefore, Acuity asks this Court to construe and determine the rights of the parties and to declare that:

a.    The Policy issued by Acuity to Central does not provide coverage for the claim asserted by the Estate because Atlantic is not an insured under the Policy;

b.    The Policy issued by Acuity to Central does not provide coverage for the claim asserted by the Estate because Caudle is not an insured under the Policy; and

c.    The Policy issued by Acuity to Central does not provide coverage for the claim asserted by the Estate because the alleged bodily injury occurred before Central acquired or formed Atlantic.

Acuity prays that it be granted the relief set forth above, the costs of this action, and any such other and further relief as this Court shall deem just and proper.

*{Signature on next page}*

GALLIVAN, WHITE & BOYD, P.A.

By: _*s/Shelley S. Montague*_____
      Shelley S. Montague (Fed Id# 7587)
      Janice Holmes (Fed Id#11366)
      1201 Main Street, Suite 1200
      Post Office Box 7368
      Columbia, South Carolina 29202
      Telephone:  803-779-1833
      Facsimile:  803-779-1767
      smontague@gwblawfirm.com
      jholmes@gwblawfirm.com

***Attorneys for Acuity, A Mutual Insurance Company***

Columbia, South Carolina
February 28, 2020